

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRIANA A. PEYTON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | Case No. EDCV 07-00068 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In a September 15, 2006 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge (the "ALJ") found that plaintiff had severe impairments consisting of a psychotic disorder, a personality disorder, and a history of alcohol abuse in remission, but that she retained the residual functional capacity ("RFC") to perform work available in significant numbers in the national economy.[See JS 2; Administrative Record ("AR") 10-16].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Global Assessment of Functioning scores**

Plaintiff contends that the ALJ erred in failing to mention Global Assessment of Functioning ("GAF") scores assessed by plaintiff's treating psychiatrists, Dr. Chang and Dr. O'Connor, and by a treating clinician, Brandt.

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn v. Astrue, 495 F.3d 625, 631-632 (9th Cir. 2007); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 SSR 96-2p, 1996 WL 374188, at *1-*2. A treating physician's opinion that is contradicted by substantial evidence in the record, such as the opinion of an examining physician based on independent clinical findings, is not entitled to controlling weight; however, that opinion is "still entitled to deference" and should be evaluated using the factors set forth in the Commissioner's regulations. Orn, 495 F.3d at 632 (quoting SSR 96-2p at 4); see Edlund, 253 F.3d at 1157; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[1] If

---

[1] Those factors include the length of the treatment relationship, the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient

2

1  contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific
2  and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec.
3  Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).
4    In his summary of the medical evidence, the ALJ noted that plaintiff was hospitalized at a Riverside
5  County Department of Mental Health (the "Department of Mental Health") treatment facility on June 28,
6  2004 as a possible danger to herself. [AR 13, 117-144]. On admission, plaintiff

> was having difficulty caring for herself, had not been eating, was acting "strangely," and
> would not leave the house. Also noted was the fact that claimant had not been taking her
> medication. Upon admission, the claimant was guarded, disheveled, distractible, confused,
> and selectively mute. The claimant's medications were adjusted and she improved. She was
> deemed ready for discharge on July 4, 2004. . . . Discharge diagnoses were psychotic
> disorder not otherwise specified and depressive disorder not otherwise specified, and her
> GAF was assessed at 65, indicating a satisfactory level of functioning.

[AR 13 (citing AR 117-144)].

  A GAF score is a "multiaxial" assessment that clinicians use for "tracking the clinical progress of individuals in global terms" using "a single value that best reflects the individual's overall level" of psychological, social, and occupational (but not physical) functioning. Diagnostic and Statistical Manual of Mental Disorders ("DSM IV") Multiaxial Assessment (4th ed. 1994)(revised 2002); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)(describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment"). The GAF score is the lower of the individual's symptom severity score or functioning severity score. A GAF score of 65, such as plaintiff received on discharge from the hospital, denotes either some mild symptoms

---

and the treating physician. Additional factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Orn, 495 F.3d at 631; 20 C.F.R. §§ 404 .1527(d)(2)-(6), 416.927(d)(2)-(6).

or some difficulty in social, occupational, or school functioning, but that score indicates that plaintiff generally was functioning pretty well. See DSM IV Multiaxial Assessment.

The ALJ also discussed the evidence concerning plaintiff's post-discharge outpatient treatment. He noted that plaintiff began outpatient treatment with the Department of Mental Health in August 2004, and that her "progress notes show continued improvement as long as she takes her medications." [AR 14 (citing AR 162-182)]. The ALJ did not explicitly refer to GAF scores ranging from 40 to 49 she received in August 2004 and early September 2004 from her treating psychiatrists, Drs. O'Connor and Chang, and from a non-physician clinician identified as Brandt. [AR 172, 174, 177]. A GAF score of 31 through 40 signifies some impairment in reality testing or communication or a major functional impairment in several areas, while a GAF score of 41 through 50 signifies serious symptoms or a serious impairment in social, occupational, or school functioning. See DSM IV Multiaxial Assessment.

The ALJ's failure to mention plaintiff's GAF scores of 40 through 49 is not legal error. The Commissioner has not endorsed the use of the GAF scale in the disability insurance and SSI programs and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (August 21, 2000); see Howard v. Comm'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

Furthermore, those GAF scores were recorded only at the beginning of plaintiff's outpatient treatment. Her outpatient progress notes constitute substantial evidence supporting the ALJ's finding that plaintiff's condition responded to her outpatient treatment and that she demonstrated continued improvement when she was compliant with her medications, which were frequently monitored and adjusted during outpatient treatment. On November 4, 2004, for example, Dr. O'Connor wrote that plaintiff reported some continuing problems with side effects and auditory hallucinations; "overall, however, she is much better." [AR 166]. On November 11, 2004, Dr. O'Connor noted that plaintiff's side effects and symptoms were improved and that she "looks better." [AR 165]. In January 2005, Dr. O'Connor's impression was that plaintiff's auditory hallucinations were almost gone or "light," and her sadness was better. Plaintiff's

irritability and repetitive hand washing were the same. [AR 162]. Plaintiff's grooming on that visit was appropriate. Her affect was a bit flat and she was shy and reticent, but she appeared euthymic, not manic and was not visibly psychotic. [AR 162]. Those observations reinforce the conclusion that plaintiff's condition had significantly improved and stabilized on medication.

Accordingly, even if plaintiff's GAF scores in August and early September 2004 signaled a deterioration in her condition between her discharge from the hospital and the commencement of outpatient treatment, there is no merit to plaintiff's contention that the ALJ committed legal error in failing to discuss those scores. .

**Information from other sources**

Plaintiff also contends that the ALJ erred in failing to discuss information from clinician Brandt and Helen Kobald ("Kobald"), a licensed clinical social worker.

To begin with, neither Brandt nor Kobald is a physician or other "acceptable medical source" as that term is defined by the Commissioner. See 20 C.F.R. §§ 416.913(a) and 404.1513(a)(stating that information from "acceptable medical sources," defined as licensed physicians, licensed or certified psychologists, license optometrists, licensed podiatrists, and qualified speech-language pathologists, is required to establish a medically determinable impairment). The ALJ "may also use evidence from other sources to show the severity of" a claimant's impairments, but the standards for rejecting treating and examining physicians' opinions generally do not apply to information from other sources. 20 C.F.R. §§ 416.913(d) and 404.1513(d); see 20 C.F.R. §§ 416.927(d)(2). The exception to that rule is where an "other source" consults frequently with, and works "closely under the supervision"of, an acceptable medical source and therefore is "acting as an agent" of the acceptable medical source. Gomez v. Chater, 74 F.3d 967, 971-972 (9th Cir. 1996), cert. denied, 519 U.S. 881 (1996).

///
///
///
///
///
///

The fact that Brandt and Kobald worked for the Department of Mental Health does not establish that either of them consulted frequently with, or worked closely under the supervision of, an acceptable medical source. In addition, both Brandt and Kobald evaluated plaintiff in August 2004, at the outset of her outpatient treatment with the Department of Mental Health. For the same reasons explained above, the outpatient treatment reports indicate that plaintiff's condition improved significantly when she was compliant with medication and not drinking. That conclusion was buttressed by opinion of the Commissioner's consultative examiner, Dr. Rodriguez, whose examination report the ALJ described at some length. [AR 14, 184-191]. Dr. Rodriguez noted that plaintiff admitted she was currently drinking alcohol, and that she brought with her to the examination prescription bottles containing unused pills in quantities indicating that plaintiff was not taking her prescribed dosage of medication. Dr. Rodriguez opined that plaintiff had a current GAF score of 60, denoting moderate symptoms or a moderate functional impairment, and he concluded that if plaintiff maintained total sobriety and used medications properly, she could recover from her problems within 12 months. [AR 189-190].

For these reasons, plaintiff's contention that the ALJ erred in disregarding the opinions of Brandt and Kobald lacks merit.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: 4.2, 2008

ANDREW J. WISTRICH
United States Magistrate Judge